IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Anne B. SHINDELL, Attorney at Law.

OFFICE OF LAWYER REGULATION, f/k/a Board of Attorneys Professional Responsibility, Complainant-Respondent,

v.

Anne B. SHINDELL, Respondent-Appellant.

Supreme Court

*No. 00–2913–D. Submitted on briefs November 14, 2002.—Decided December 27, 2002.*

2002 WI 133

(Also reported in 654 N.W.2d 844.)

 

For the respondent-appellant there were briefs by *Terry E. Johnson, Frederick J. Smith,* and *Peterson, Johnson & Murray, S.C.,* Milwaukee.

For the complainant-respondent, there was a brief by *Robert G. Krohn* and *Roethe, Krohn, Pope, McCarthy & Haas, LLP,* Edgerton.

¶ 1 PER CURIAM. Attorney Anne B. Shindell appealed from the referee's report concluding that Attorney Shindell engaged in misconduct with respect to her representation of five clients. She also appealed from the referee's recommendation that her license to practice law be suspended for one year.

¶ 2. We determine that the referee's findings of fact are supported by clear, satisfactory, and convincing evidence. We further determine that the seriousness of the misconduct warrants the suspension of Attorney Shindell's license to practice law for one year.

¶ 3. Attorney Shindell was admitted to practice law in Wisconsin in 1979 and practiced in Milwaukee, specializing in employment law. In 1995 she consented to the imposition of a private reprimand for violating a statute, supreme court rule, supreme court order, or supreme court decision regulating the conduct of lawyers, as well as violating supreme court rules regarding fees, and violating the rule that requires a partner in a law firm to make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurances that all lawyers in the firm conform to the Rules of Professional Conduct. On October 21, 2002, in another proceeding, this court granted the motion of the Office of Lawyer Regulation (OLR) to summarily suspend Attorney Shindell's license based on criminal convictions for attempted theft by fraud and resisting or obstructing an officer.

¶ 4. The OLR filed its complaint on October 23, 2000. Attorney Shindell filed an answer in November 2000. Attorney Stanley F. Hack was appointed as referee. Hearings were conducted before the referee between August 20, 2001, and October 9, 2001. The referee issued his report and recommendation on January 22, 2002. The referee made findings of fact based on testimony and documentary evidence presented at the hearings concerning Attorney Shindell's representation of the five clients. The referee found that in the course of representing these clients Attorney Shindell engaged in a pattern of neglect that included a failure to return unearned fees in several matters.

¶ 5. The first claim of misconduct alleged in the OLR's complaint involved a client who retained Attorney Shindell in early 1994 to prosecute an employment termination and benefits dispute, including an Equal Employment Opportunity Commission (EEOC) claim,

against her former employer. Between January 1994 and early 1996 Attorney Shindell filed an initial EEOC claim and engaged in negotiations with the former employer's counsel regarding the client's retirement benefits and health insurance coverage.

¶ 6. In April and May 1995 the client wrote to Attorney Shindell inquiring about the status of the case. Attorney Shindell failed to respond. In June of 1995 Attorney Shindell informed the client that she had obtained a settlement with the former employer regarding medical and retirement benefits. In August 1995 the client wrote to Attorney Shindell inquiring as to the status of the settlement papers and expressing her concern over the health insurance continuation issue. Attorney Shindell's office sent a proposed agreement to the client on September 7, 1995. The agreement did not include a reference to the special payment allowance which the client claimed to have understood to be part of the agreement based on her earlier conversations with Attorney Shindell.

¶ 7. After trying unsuccessfully to contact Attorney Shindell by telephone the client wrote to Attorney Shindell on October 5, 1995, urging her to complete the litigation and again emphasizing her concern about health insurance coverage. After hearing nothing further from Attorney Shindell the client again wrote to Attorney Shindell on October 22, 1995, and enclosed an executed copy of the separation agreement and general release to which the client had added initialed handwritten language providing for inclusion of the special payment allowance. On October 26, 1995, Attorney Shindell signed her approval on the agreement and also initialed the handwritten language pertaining to the special payment allowance. By letters dated November

9, 1995, and January 3, 1996, the client again urged Attorney Shindell to finalize the matter.

¶ 8. On January 24, 1996, Attorney Shindell wrote to adverse counsel requesting a cost analysis in the event the former employer were to provide the group retiree health benefit to the client. Adverse counsel replied that he had earlier stated the former employer's position, which was that the proposed settlement agreement specifically omitted any special payment allowance. Attorney Shindell did not forward this letter to the client until March 18, 1996. On April 3, 1996, Attorney Shindell informed the client that comprehensive health insurance could be available to her if she would accept the settlement offer without the added language pertaining to the special payment allowance.

¶ 9. Attorney Shindell took no further action regarding the pending claim. On April 18, 1996, EEOC issued a dismissal and notice of rights within 90 days of the dismissal letter stating it was unlikely further investigation would result in a finding of discrimination but that no decision had been made on the merits of the charge. In the course of an April 26, 1996, telephone conversation with Attorney Shindell the client agreed to withdraw the special payment allowance claim with the understanding that the settlement agreement would then be accepted by her former employer to include health insurance coverage. Without notice to the client Attorney Shindell closed the file.

¶ 10. In September 1997 the client wrote to Attorney Shindell reminding her that the health insurance coverage needed to commence no later than April 1, 1998, and inquiring as to the status of the EEOC claim. Attorney Shindell failed to respond. The client again wrote to Attorney Shindell in February and October 1998. The client's telephone log, which was

admitted into evidence at the disciplinary hearings, revealed approximately 20 calls to Attorney Shindell between February 26, 1998, and August 28, 1998. Most of those calls were not returned by Attorney Shindell.

¶ 11. In April or May of 1998 Attorney Shindell attempted to contact the former employer regarding the client's health insurance coverage. Adverse counsel responded by letter of May 7, 1998, saying that a settlement agreement had never been reached between the parties. Attorney Shindell never forwarded a copy of this letter to the client or advised the client of its content.

¶ 12. The client's brother attempted to contact Attorney Shindell by telephone to discuss the matter. After receiving no response the client's brother wrote to Attorney Shindell. Attorney Shindell subsequently spoke to the client's brother and said the litigation would be reopened and that the former employer's counsel would again be contacted for purposes of enforcing the prior agreement. Attorney Shindell promised some action in the matter and a written report of her progress no later than February 16, 1999. She never provided any such report to the client or the client's brother.

¶ 13. The second claim of misconduct alleged in the OLR's complaint involved a client whose employment was terminated in October 1997. The client was interested in negotiating a better deal for himself than his former employer had initially offered, and he paid Attorney Shindell a $500 retainer. Attorney Shindell obtained the client's personnel file from the former employer and corresponded with the former employer regarding benefits that might be available to the client. Attorney Shindell also reviewed the former employer's offer and on February 6, 1998, submitted a counteroffer.

¶ 14. During a February 12, 1998, telephone conversation with the former employer's human resources corporate counsel Attorney Shindell attempted to get the former employer to find another position for the client. The former employer refused to modify its original severance package offer. Attorney Shindell failed to inform the client of this negotiating session. On March 5, 1998, Attorney Shindell and the former employer's counsel continued their discussions regarding the client's severance package. The former employer's counsel agreed to provide Attorney Shindell with a deadline of March 13, 1998, to accept or reject their offer.

¶ 15. On March 13, 1998, the client and Attorney Shindell discussed the matter and Attorney Shindell informed the client for the first time that his former employer would not extend benefits beyond the original severance package offer. During the week of March 23, 1998, the client made numerous calls to Attorney Shindell. Attorney Shindell failed to return any of the calls. After hearing nothing from Attorney Shindell the client negotiated directly with his former employer and was able to obtain certain concessions from them in addition to the benefits set forth in the original severance package offer. Attorney Shindell was not involved in these negotiations or the ultimate settlement. During his final negotiations with his former employer the client was advised by the former employer's counsel that counsel had informed Attorney Shindell of their position on the severance agreement on February 12, 1998.

¶ 16. On May 10, 1999, the Board of Attorneys Professional Responsibility (BAPR) (the predecessor to the OLR) staff sent Attorney Shindell a letter via regular mail requesting a response to the client's griev-

69

ance within 20 days. On June 11, 1999, having received no response the BAPR staff sent Attorney Shindell another letter via certified mail demanding a response to the client's grievance within ten days. On June 21, 1999, Attorney Shindell telephoned the BAPR staff and said she would file a response by the end of the week. The response was not filed by that date.

¶ 17. The third claim of misconduct alleged in the OLR's complaint involved a client whose employment was terminated in November 1998 and sought Attorney Shindell's services to improve his severance package. This client signed a retainer agreement letter on December 11, 1998, and paid Attorney Shindell a $1000 retainer. The retainer agreement provided that the $1000 was to be applied to the fees and costs incurred in the matter. The agreement did not contain any provision indicating the $1000 was not refundable. In early January 1999 the client contacted Attorney Shindell's office inquiring as to the status of his case. Attorney Shindell failed to return the client's calls and he decided to terminate her services. He requested a refund of his $1000 retainer.

¶ 18. On January 7, 1999, an employee in Attorney Shindell's office sent Attorney Shindell an e-mail advising her that the client did not want to proceed any further and that he wanted the $1000 retainer returned, less any earned fees. On January 25, 1999, Attorney Shindell sent the client a billing statement reflecting legal services totaling $16.50 and disbursements totaling $19.25. On February 23, 1999, the client sent Attorney Shindell a certified letter saying he had left eight telephone messages that were not returned and that he wanted the $1000 retainer, less disbursements, returned. Attorney Shindell failed to respond.

¶ 19. On June 15, 1999, the client filed a small claims action against Attorney Shindell in Milwaukee County. The client obtained a default judgment against Attorney Shindell in the amount of $1182. Attorney Shindell satisfied the judgment on or about October 1, 1999.

¶ 20. By letters dated March 31, 1999, and April 30, 1999, the BAPR staff notified Attorney Shindell of the client's grievance and requested a written response. By telephone conversation on May 6, 1999, the BAPR staff extended the time for Attorney Shindell to respond to the grievance to May 24, 1999. No response was filed by that date. By letter dated June 2, 1999, the BAPR staff again requested that Attorney Shindell provide a written response to the grievance. On June 21, 1999, Attorney Shindell called the BAPR staff and indicated a response would be received by the end of that week. No response was filed.

¶ 21. The fourth claim of misconduct alleged in the OLR's complaint involved a client who retained Attorney Shindell in April 1998 to either negotiate a settlement or proceed to litigation with her deceased husband's employer and its insurance company regarding salary and death benefit issues. The client paid Attorney Shindell a retainer of $1000.

¶ 22. The client initially met with an associate at Attorney Shindell's firm. The associate left the firm shortly thereafter. Prior to her departure the associate prepared a memorandum to the file setting forth a number of facts and conclusions regarding the client's claims. The memorandum generally concluded that the client's claim was not viable since it depended upon proving that the client's husband's employer acted in a discriminatory manner toward the client's husband under the Americans with Disabilities Act. The associ-

ate concluded this proof was difficult and that the matter did not warrant litigation. The associate urged that the Shindell law firm contact the employer's counsel to see whether they would stand by an earlier proposal that had been made to the client to include payment of wages and benefits due at the original contract rate rather than at a reduced rate, provided the client would agree not to pursue additional life insurance benefits. The associate also recommended the Shindell law firm contact a medical malpractice attorney to see if there was a viable claim arising from the circumstances surrounding the care the client's husband received prior to his death. The associate informed the client that Attorney Shindell would be handling the rest of the case.

¶ 23. Attorney Shindell first met with the client on January 9, 1998. She did not discuss the contents of the associate's memorandum with the client at that time. Following this meeting the client wrote numerous letters and made multiple telephone calls to Attorney Shindell to inquire about the status of the case. The client also provided additional information relating to her claim by correspondence dated October 12, 1998, and February 5, 1999. Attorney Shindell failed to respond to the client's inquiries.

¶ 24. On February 17, 1999, the client wrote to Attorney Shindell saying she was terminating the attorney-client relationship. By certified letter dated February 25, 1999, the client requested that her file be sent to her. Attorney Shindell failed to respond. In a May 24, 1999, telephone call with Attorney Shindell the client again requested her file, and by letter dated June 5, 1999, the client asked for a refund of all monies that had been paid to Attorney Shindell. On July 1, 1999, the client sent a certified letter to Attorney Shindell again

asking for her file and a refund of the fees paid. Attorney Shindell failed to respond. The client paid approximately $2800 in fees and costs to Attorney Shindell.

¶ 25. By letter dated August 6, 1999, the BAPR staff notified Attorney Shindell of the client's grievance and requested her to file a written response within 20 days. Attorney Shindell requested and received an extension until September 10, 1999. On September 17, 1999, the BAPR staff sent a certified letter to Attorney Shindell noting the prior extension to respond to the client's grievance and informing Attorney Shindell that a written response was to be postmarked no later than September 27, 1999. By voicemail message of September 28, 1999, Attorney Shindell requested an additional extension until October 14, 1999, to respond to the grievance. The extension was granted by the BAPR staff. Attorney Shindell failed to submit a written response to the client's grievance.

¶ 26. The fifth claim of misconduct alleged in the OLR's complaint involved a man whose employment was terminated in October of 1998. In late 1998 he retained Attorney Shindell to advise him regarding a possible monetary claim against his former employer. Attorney Shindell agreed to research the merits of the claim and to send a demand letter to the client's former employer within a month. The client provided Attorney Shindell with various documents relevant to his claim and paid her a $1000 retainer fee.

¶ 27. In March and early April of 1999 the client attempted to contact Attorney Shindell several times to inquire about the status of his case. Attorney Shindell either failed to respond or provided evasive answers. She also failed to forward a demand letter to the client's former employer.

¶ 28. On or about April 20, 1999, the client received Attorney Shindell's billing statement. He wrote to her disputing various billing entries and terminating her legal representation. He requested a return of the unearned portion of his retainer fee. The client wrote additional letters on May 4 and May 14, 1999, again demanding return of the unearned portion of his retainer. Attorney Shindell failed to respond.

¶ 29. On May 15, 1999, the client filed a small claims action against Attorney Shindell in Milwaukee County seeking return of the unearned portion of the retainer fee. Attorney Shindell was personally served with the small claims summons and complaint on May 17, 1999. That same day she wrote to the client promising to send a final bill with any refund that might be due.

¶ 30. On June 4, 1999, a default judgment was entered in the client's favor in the amount of $987.92. On May 24, 2000, Attorney Shindell executed and saw to the filing of a satisfaction of judgment indicating that the judgment had been fully paid and satisfied. The client never consented to or authorized the signing or the filing of a satisfaction of judgment.

¶ 31. By letter dated June 22, 1999, the BAPR staff advised Attorney Shindell of the client's grievance and requested a written response within 20 days. Attorney Shindell failed to respond. By letter of July 22, 1999, the BAPR staff again requested a written response to the client's grievance no later than August 2, 1999. Attorney Shindell again failed to respond.

¶ 32. The referee found that by failing to respond to telephone calls and inquiries and failing to perform appropriate legal services on behalf of the first, second, and third clients, Attorney Shindell violated SCR

20:1.3.[1] The referee also found that by failing to respond to letters and telephone calls from the first, second, and fourth clients inquiring as to the status of their claims and by not providing those clients with timely information, Attorney Shindell violated SCR 20:1.4(a).[2] The referee also found that by failing to inform the first client about the status of negotiations and failing to inform her of the consequences of not pursuing either the health insurance issue or the EEOC claims, and by failing to inform the second client about his former employer's position as to the severance agreement in a timely manner, Attorney Shindell violated SCR 20:1.4(b).[3]

¶ 33. The referee also concluded that by failing to provide further legal services on behalf of the first, third, fourth, and fifth clients, Attorney Shindell violated SCR 20:1.16(d).[4] The referee also found that by filing a judgment satisfaction on her own behalf without authority from the fifth client and by falsely assert-

---

[1] SCR 20:1.3 provides: "Diligence. A lawyer shall act with reasonable diligence and promptness in representing a client."

[2] SCR 20:1.4(a) provides: "Communication. (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[3] SCR 20:1.4(b) provides: "(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

[4] SCR 20:1.16(d) provides:

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

ing within the document that the small claims judgment had been satisfied to the fifth client's satisfaction, Attorney Shindell violated SCR 20:3.3(a)(1).[5] The referee also concluded that Attorney Shindell's actions with respect to the satisfaction of judgment violated SCR 20:8.4(c).[6]

¶ 34. The referee also concluded that by failing to provide written responses to grievances filed by the second, third, fourth, and fifth clients, and by failing to cooperate with the BAPR's investigation, Attorney Shindell violated former SCR 21.03(4) and 22.07(2).[7]

¶ 35. The referee recommended that Attorney Shindell's license to practice law in Wisconsin be suspended for one year. He also recommended that, as a condition to seeking reinstatement, Attorney Shindell

---

[5] SCR 20:3.3(a)(1) provides: "Candor toward the tribunal. (a) A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal."

[6] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to: (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[7] Former SCR 21.03(4) provides: "(4) Every attorney shall cooperate with the board and the administrator in the investigation, prosecution and disposition of grievances and complaints filed with or by the board or administrator."

Former SCR 22.07(2) provides:

During the course of an investigation, the administrator or a committee may notify the respondent of the subject being investigated. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct or medical incapacity within 20 days of being served by ordinary mail a request for response to a grievance. The administrator in his or her discretion may allow additional time to respond. Failure to provide information or misrepresentation in a disclosure is misconduct. The administrator or committee may make a further investigation before making a recommendation to the board.

should be required to refund $2800 to the fourth client and should be required to pay the small claims judgment entered in favor of the fifth client in the amount of the judgment, together with statutory interest to the date paid. The referee also recommended that Attorney Shindell be ordered to pay the OLR the cost of the proceedings within 60 days.

¶ 36. Attorney Shindell argues that many of the referee's findings of fact are clearly erroneous. She asserts that the referee erred in giving too much weight to the testimony of the five former clients while discounting testimony presented by disinterested witnesses. She also argues that the referee erroneously punished her for not paying the small claims judgment entered in favor of the fifth client, and she asserts there is no ethical or professional obligation to pay a judgment. She also asserts that the referee discounted various mitigating factors such as the fact that she went through an acrimonious divorce, suffered from serious health problems, and had administrative problems at her office, including embezzlement by a former office manager and difficulties retaining employees. She asserts that to the extent this court finds that any neglect of client matters has been proven, a 60–day suspension would be an appropriate level of discipline.

¶ 37. The OLR responds that the referee's decision appropriately addresses the underlying witness credibility issues. The OLR contends the referee's findings of fact are not clearly erroneous and that his conclusions of law are supported by clear, satisfactory, and convincing evidence.

■■■■

¶ 38. A referee's findings of fact on a disciplinary matter will not be set aside unless clearly erroneous. *In re Disciplinary Proceedings Against Sosnay*, 209 Wis.

2d 241, 243, 562 N.W.2d 137 (1997). Conclusions of law are reviewed de novo. *In re Disciplinary Proceedings Against Carroll,* 2001 WI 130, 248 Wis. 2d 662, 675, 636 N.W.2d 718. Since the referee's findings of fact have not been shown to be clearly erroneous, we adopt them. We also adopt the conclusions of law as set forth in the referee's report and recommendation.

¶ 39. The referee noted, and we agree, that the record demonstrates the existence of a number of mitigating factors, including the fact that Attorney Shindell suffered from serious personal and health problems and also had administrative problems in her office which seemed to peak in early 1999. As the referee also noted, however, it would have been appropriate for Attorney Shindell to have obtained assistance from other attorneys in her office or brought in outside counsel during this time, and the absence of this assistance was not the fault of her clients, who were unaware of Attorney Shindell's problems.

¶ 40. Attorney Shindell's misconduct with respect to her handling of the five client matters and her failure to cooperate with the BAPR's investigation are serious failings warranting a suspension of her license. A one-year suspension of her license to practice law is appropriate discipline for her professional misconduct.

¶ 41. IT IS ORDERED that the license of Attorney Anne B. Shindell to practice law in Wisconsin remains suspended for a period of one additional year, effective the date of this order.

¶ 42. IT IS FURTHER ORDERED that Attorney Anne B. Shindell comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 43. IT IS FURTHER ORDERED that Attorney Anne B. Shindell refund, within 60 days of the date of

this order, $2800 to the fourth client. If this refund is not made within the specified time, the license of Attorney Anne B. Shindell to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 44. IT IS FURTHER ORDERED that within 60 days of the date of this order, Attorney Anne B. Shindell pay the small claims judgment entered in favor of the fifth client with interest accrued to date. If this payment is not made within the specified time, the license of Attorney Anne B. Shindell to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 45. IT IS FURTHER ORDERED that within 60 days of the date of this order, Attorney Anne B. Shindell pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified and absent a showing to this court of her inability to pay the costs within that time, the license of Attorney Anne B. Shindell to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 46. IT IS FURTHER ORDERED that restitution to the fourth client and payment of the small claims judgment, with interest, to the fifth client, shall be paid prior to paying costs to the Office of Lawyer Regulation.